UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
KENNETH JORDAN,

                Plaintiff,                15 CV 6739 (SJ) (JO)

    -against-

                                              **AMENDED COMPLAINT**

CITY OF NEW YORK, FAYAZ KHAN,
and DAVID MORALES,

                                              **PLAINTIFF DEMANDS**
                Defendants.          **A TRIAL BY JURY**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

        Plaintiff Kenneth Jordan, by his attorneys, Lumer & Neville, as and for his Amended Complaint, hereby alleges as follows, upon information and belief:

### PARTIES, VENUE and JURISDICTION

        1.     At all times hereinafter mentioned, plaintiff was an adult male and a resident of the State of Georgia.

        2.     At all relevant times hereinafter mentioned, defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

        3.     At all relevant times hereinafter mentioned, defendant Fayaz Kahn (Tax No. 952928), was employed by the City of New York as a member of the NYPD. Khan is sued herein in his official and in individual capacities.

        4.     At all relevant times hereinafter mentioned, defendant David Morales

(Tax and Shield Nos. unknown), was employed by the City of New York as a member of the NYPD.  Morales is sued herein in his official and in individual capacities.

5.	This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983.

6.	Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq., in the Eastern District of New York, where the defendant City of New York resides, and where the majority of the actions complained of herein occurred.

**RELEVANT FACTS**

7.	On August 6, 2013, at or about 4:30 p.m., plaintiff was lawfully driving a motor vehicle near or at the intersection of 169 Street and Jamaica Avenue in in Queens County, New York.

8.	It was at this time that he encountered defendants Khan and Morales (collectively the "individual defendants").

9.	The individual defendants were uniformed, on duty, and acting on behalf of their employer, the NYPD when they encountered plaintiff.

10.	The individual defendants signaled for plaintiff to stop his vehicle and plaintiff promptly complied with their order.

11.	The individual defendants checked plaintiff's identification and then, without any meaningful explanation, placed him in handcuffs and undertook a full custodial arrest (the "Arrest").

12. Plaintiff was transported in handcuffs to a local area police precinct station house, where he was imprisoned for hours while his arrest was processed.

13. Plaintiff was later transported to Central Booking, where he was imprisoned for many more hours.

14. At no time did defendants have sufficient legal cause to arrest and imprison plaintiff, nor was it reasonable for defendants to believe such cause existed.

15. While plaintiff was were imprisoned by the defendants, defendant Khan completed arrest paperwork in which he expressly claimed that plaintiff had committed an offense under New York State's Vehicle and Traffic Law ("VTL") §375-12-A(B) by driving a vehicle with unduly tinted windows.

16. The factual and legal allegations by Khan were materially false in all regards as the plaintiff's car windows were not improperly tinted and Khan's claim to the contrary were fabricated.

17. No explanation was given at the time for the individual defendants' decision to effectuate a full custodial arrest of plaintiff rather than issuing him a summons for the alleged VTL offense of driving with tinted windows.

18. Defendant Khan also memorialized that an outstanding warrant for plaintiff existed at the time of the Arrest and that the defendants learned of the warrant's existence at some point following their seizure of plaintiff.

19. This discovery by Khan occurred after plaintiff was in custody and under arrest.

20. Khan has further identified this warrant as "Active Warrant DOC#2006SQ005832" (the "Warrant").

21. The Warrant appears to be a bench warrant that issued on or about February 2, 2006, by the Criminal Court of the City of New York, and thus would have been pending for more than seven years by the time of the Arrest. The "SQ" contained in the docket number suggests that the Warrant is predicated on an alleged failure to appear following the issuance of a summons for violation of "HC 181.03(A)(00)V."

22. Plaintiff was unaware of the existence of any active or open warrants of any sort, including the Warrant, and, in fact, did not have any active or open warrants.

23. On April 13, 2013, just a few months prior to this Arrest, plaintiff had been seized by the NYPD in Queens County following a vehicle stop, and subjected to a full custodial arrest based on the arresting officers' false claim that plaintiff's Georgia drivers license was counterfeit. While that case was later dismissed – and resulted in a civil suit docketed in this Court as 2013 CV 6332 (NG) (VVP) that settled for $17,500 – the more salient point is that none of the officers who processed that arrest, or any other person involved the arrest and prosecution, found any evidence that this supposedly active Warrant existed.

24. Khan forwarded these false allegations to the Queens County District Attorney ("QCDA") in order to justify the arrest and to persuade the QCDA to commence the plaintiff's criminal prosecution.

25. Khan knew and understood that the QCDA, in evaluating whether to

commence a criminal prosecution against the plaintiff, was relying on the truthfulness of his claims, and was assuming that all of Khan's factual statements were truthful in all material respects.

26. As a direct result of these allegations by Khan, the plaintiff was criminally charged by the QCDA under 2013QN043403 with one count of violating VTL §375-12-A(B).

27. Plaintiff was not issued any summonses or tickets nor charged with any other crimes or offenses, beyond what was alleged in the criminal complaint.

28. Plaintiff was held in defendants' custody until his arraignment on the criminal complaint on August 7, 2013.

29. Plaintiff was not presented on the supposedly active Warrant, nor was there any discussion of the Warrant's existence, and in fact the QCDA and the Criminal Court proceeded as though the Warrant did not exist.

30. The plaintiff accepted an adjournment in contemplation of dismissal at his arraignment and the case, meaning the one count arising under the VTL, was subsequently dismissed.

31. Khan intentionally and deliberately transmitted false statements to his supervising officers and the QCDA to justify the unlawful stop, arrest, and imprisonment of plaintiff, and to bring about plaintiff's criminal prosecution.

32. The individual defendants failed to file accurate or corrective statements, failed to intervene in order to prevent the other from violating plaintiff's

constitutional rights, and failed to report each other's conduct to their supervisors at the NYPD or otherwise take any steps of any sort to protect plaintiff from injury.

33. That at all times relevant herein, the defendants were on duty and acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

34. Plaintiff repeats the above allegations as though stated fully herein.

35. Defendants willfully and intentionally seized, searched, detained, and arrested plaintiff, and caused him to be imprisoned, without probable cause, and without a reasonable basis to believe such cause existed.

36. Defendants willfully and intentionally fabricated evidence and denied plaintiff a fair trial by falsely claiming that the windows of plaintiff's vehicle were tinted to a degree that was in violation of state law, and then forwarded this materially false factual claim to the QCDA in order to bring about and cause the criminal prosecution of the plaintiff.

37. By so doing, the individual defendants, individually and collectively, subjected the plaintiff to false arrest and imprisonment, unlawful searches of person and property, and the deprivation of his right to a fair trial through the use of fabricated evidence, and thereby violated, conspired to violate, and aided and abetted in the violation of plaintiff's rights under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution.

38. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## SECOND CAUSE OF ACTION

39. Plaintiff repeats the above allegations as though stated fully herein.

40. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the NYPD.

41. Defendants had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority, abuse of arrest powers, fabrication of evidence, and other blatant violations of the United States Constitution and the rules and regulations of the NYPD. Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put place to reasonably ensure that NYPD members engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiff herein.

42. The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted,

condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests, and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond the plaintiff's arrest.

43. The acts complained of herein are a direct and proximate result of the failure of the City of New York and the NYPD properly to select, train, supervise, investigate, promote and discipline police and correction officers and supervisory officers.

44. The failure of the City of New York and the NYPD properly to select, train, supervise, investigate, promote and discipline police and correction officers and supervisory officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

45. The official policies, practices and customs of the City of New York and the NYPD alleged herein violated the plaintiff's rights guaranteed by 42 U.S.C. § 1983, the Fourth, Sixth and Fourteenth Amendments to the Constitution of the United States.

46. All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures, and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD.

47. Therefore the municipal defendant has not only tolerated, but actively

fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of the plaintiff's constitutional rights.

48. By reason thereof, the municipal defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

### THIRD CAUSE OF ACTION

49. Plaintiff repeats the above allegations as though stated fully herein.

50. The foregoing violations of plaintiff's federal constitutional rights and injuries were further directly, foreseeably, proximately, and substantially caused by conduct chargeable to the defendant City of New York through its continued use of an unreliable and flawed system of determining whether there are active or open warrants for individuals seized or arrested by the NYPD and/or the municipal defendant's deliberate indifference to the likelihood that the NYPD's current methods for determining whether there are active and open warrants for such persons, resulting in the violation of the right of people, including plaintiff, who are seized or otherwise arrested based on purportedly active or open warrants, to be free from such unlawful seizures and arrests under the Fourth and Fourteenth Amendments to the Constitution. .

51. Defendant City of New York utilizes one or more warrant database systems that are used, in relevant part, to determine whether certain individuals have any

active, meaning open or pending, warrants, including the NYPD's Automated Database Warrant System ("ADW").

52. This computer database enables the NYPD to verify whether any active warrants have been issued against an individual and NYPD officers routinely access the ADW for various purposes, including, but not limited to, determining whether a person they have stopped and detained, has any active warrants. Similarly, NYPD officers access ADW as a matter of course while processing arrests to determine whether the person in custody has any active warrants.

53. The ADW system compiles information on warrants transmitted by the New York State Office of Court Administration ("NYSOCA") to the NYPD. When NYSOCA informs the NYPD of an open warrant, the warrant is issued an Originating Case Agency ("OCA") number and is added to the ADW system. For such each OCA number, the ADW contains information regarding the date and time a warrant is placed in the ADW system, the date and times in which a warrant is printed, and the date and time a warrant is cancelled from the system.

54. This process ensures that when state courts issue bench warrants, the NYPD will be made aware of the warrants' issuance and the apparent existence of active or open warrants for individuals who may be in defendants' custody.

55. When bench warrants are vacated by the courts that issued them, they become inactive, and no longer provide any basis or legal justification for the seizure or arrest of the person for whom the warrant had issued.

56. However, upon information and belief, the ADW system does not adequately or accurately or reliable reflect when once-active or open warrants have been vacated by state and local courts. Whether this results from the manner in which the ADW system was coded or is otherwise maintained, or because of deficient or inadequate communication between the NYSOCA and the NYPD, or for some other reason or combination of factors, is not immediately clear.

57. What is evident is that the NYPD's ADW is not timely or reliably updated to reflect when warrants are vacated, or is otherwise maintained in such a manner as to result in search results that wrongly indicate that inactive or vacated warrants are still active or open, and that, as a result, the NYPD often determines that individuals in its custody have active or open warrants, when in fact they do not, and then seize or otherwise continue to detain or imprison these individuals based on the erroneous warrant information.

58. Upon information and belief, the NYPD is aware that the information contained in the ADW is not reliably updated or may state that there are active or open warrants that were, in fact, inactive or vacated, and that NYPD members know that purportedly active warrants may actually be incorrectly marked as such in the ADW system.

59. Upon information and belief, the NYPD is aware that there are additional databases available to the NYPD which can corroborate or otherwise correct the ADW information so as to reflect whether supposedly active or open warrants are, in fact, active or open, yet the NYPD makes no effort to utilize these databases in conjunction with or to supplement the ADW system.

60. Rather, the NYPD continues to employ a policy and practice by which its officers are instructed to routinely utilize the ADW system to determine whether a person has any active or open warrants during a stop or arrest, and to treat all positive responses as complete, accurate, and reliable, and forego any attempt at corroboration through a secondary database sources, such as the State Court system's Criminal Records and Information Management System ("CRIMS"), with the result that officers often receive false positive responses that erroneously inform officers that certain people are subject to immediate arrest for warrants that, in fact, are no longer open.

61. This practice results in the actual seizure and detention of individuals pursuant to inactive or vacated warrants, and thereby violates these individuals' Fourth Amendment right to be free from such seizures absent probable cause and Fourteenth Amendment right to due process, which is denied when state actors continue to utilize warrants that have already been judicially vacated.

62. The NYPD is aware that the ADW system is either unreliable, or is employed in an unreliable fashion, i.e., is not kept current or is not utilized in conjunction with other databases to obtain more accurate or reliable information, yet it continues to adhere to this policy and practice, which brought about the prolonged seizure and imprisonment of plaintiff in this case.

63. It is therefore clear that the municipal defendant has not only tolerated, but actively fostered a policy and practice within the NYPD and that the City of New York, at the bare minimum, has been on notice of, and remained deliberately indifferent to, the risk

that the continued use of an unreliably method of determining whether a person has one or more active warrants would lead to the violation of individuals' constitutional rights in general, and the violation of plaintiff's rights in particular.

64. By reason thereof, the municipal defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

WHEREFORE, the plaintiff demands judgment against defendants jointly and severally as follows:

    i.    on the first cause of action, actual and punitive damages in an amount to be determined at trial;

    ii.    on the second cause of action, actual damages in an amount to be determined at trial; and

    iii.    on the third cause of action, actual damages in an amount to be determined at trial; and

    iv.    statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of the action; and

    v.    such other relief as the Court deems just and proper.

Dated:   New York, New York
            March 24, 2016

                                  LUMER & NEVILLE
                                  Attorneys for Plaintiff
                                  225 Broadway, Suite 2700
                                  New York, New York 10007
                                  (212) 566-5060

                                  _____
                                  Michael B. Lumer (ML-1947)